Hoyt GREEN, Plaintiff–Appellant,

v.

CITY OF HAMILTON, HOUSING AUTHORITY, Richard M. Prokop, Individually and as Director of Housing Authority of Hamilton, Alabama, Lee Cooper, individually and as Commissioner or Director of Housing Authority of Hamilton, Alabama, Vosso W. Frederick, individually and as a Commissioner or Director of Housing Authority of Hamilton, Alabama, Mark Hammitte, individually and as a Commissioner or Director of Housing Authority of Hamilton, Alabama, Jennie Hankins, individually and as Commissioner or Director of Housing Authority of Hamilton, Alabama, Gatmon Green, individually and as a Commissioner or Director of Housing Authority of Hamilton, Alabama, Defendants–Appellees.

No. 90–7364.

United States Court of Appeals, Eleventh Circuit.

Aug. 9, 1991.

---

Neil Taylor, Jr., Russellville, Ala., (admit. pro hac vici), for plaintiff-appellant.

Maston E. Martin, Jr., Spain, Gillon, Grooms, Blan & Nettles, Thomas M. Eden, III, Birmingham, Ala., for defendants-appellees.

Before KRAVITCH and EDMONDSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Appellant Green brought this Section 1983 action against the Housing Authority of Hamilton (hereinafter "the Authority"), his former employer, alleging that when the Authority discharged him it failed to give him the process due under the federal Constitution. Ruling that Green had no property interest in continued employment as a matter of state law, and thus no federal due process rights, the district court granted the Authority's motion for summary judgment. Because we conclude Green's allegations and supporting affidavits raise questions of fact regarding a property interest in continued employment under Alabama law, we VACATE the summary judgment and REMAND for further proceedings.

## I.

For purposes of review, we look at the evidence in the light most favorable to Green. If, so viewed, the evidence would allow a reasonable jury to find Green had a property interest, then a genuine question of material fact exists; and the summary judgment must be reversed. *See Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990).

Viewing the evidence in this way, it appears that when Green was hired the Authority's Executive Director told him that, after a probationary period of six months, he would be a "permanent" employee. In one pre-employment interview, after Green expressed concern that accepting the position would require financial sacrifice on his part (he would have to move from another state, and his wife would have to give up her job), the Executive Director told Green that at the end of six months, if he lasted that long, he would be "home-free" and would have to do something horribly bad to get fired. Green also was given a copy of the Authority's Personnel Policy Handbook. The handbook contained a statement reflecting the policy that employees become "permanent" after a six-month probationary period, as well as a provision addressing involuntary dismissals: an employee could be discharged without notice for unsatisfactory service or violation of regulations, but the discharged employee would then have a right to a post-discharge hearing upon request.

Green accepted the job with the Authority and, after his probationary period, was kept on as a "permanent" employee. Three years later the Authority fired Green using procedures that we will assume, for purposes of this review, failed to meet the requirements of due process. This litigation ensued.

## II.

Green's procedural due process claim can succeed only if he had a property interest in continued employment with the Authority, *see Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); and he had a property interest in his continued employment with the Authority only if he had a legitimate claim of entitlement to continued employment under state law, *see Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Such a claim of entitlement may be based on, among other things, a contract. *See Lassiter v. Covington*, 861 F.2d 680, 682 (11th Cir.1988). Green asserts that the Executive Director's statements before and at the time of his hiring (that is, statements that after six months he would be "permanent" and would have to do something horribly bad to be fired), reinforced by provisions of the Authority's

Personnel Policy Handbook, gave rise to a contract-based legitimate claim of entitlement to continued employment.

■ For purposes of establishing a property right in continued employment under Alabama law, the crucial question is whether the employment is terminable by the employer "at will" or whether the employer's discretion to discharge the employee is somehow fettered. *Compare, e.g., Davis v. Mobile Consortium of CETA*, 857 F.2d 737, 741 (11th Cir.1988) (public employee who may be discharged at will has no property interest in continued employment and no entitlement to due process protection) *with e.g., Thompson v. Bass*, 616 F.2d 1259, 1265 (5th Cir.1980) (public employee whose employment may be terminated only for cause has property interest and is entitled to due process protection). Thus, if Green can show his employment was in fact "permanent" or terminable only for cause, he can establish a property interest entitling him to due process protection.

■ Under Alabama law, "permanent" employment means employment for as long as the employer is in business and needs the services the employee provides, and the employee is willing and able to do his work and gives no cause for discharge. *Alabama Mills v. Smith*, 237 Ala. 296, 186 So. 699, 701–02 (1939), *quoted in Chastain v. Kelly–Springfield Tire Co.*, 733 F.2d 1479, 1482 (11th Cir.1984). Although Alabama courts consider employment "at will" to be the norm, they will recognize and enforce contracts for "permanent" employment— as construed above—under certain circumstances. *See, e.g., Hoffman–LaRoche v. Campbell*, 512 So.2d 725, 728 (Ala.1987); *Scott v. Lane*, 409 So.2d 791 (Ala.1982). An employment relationship is "permanent," and thus not terminable "at will," if: (1) there was a clear and unequivocal offer of "permanent" employment, (2) the employee provided some substantial consideration for the contract apart from the services to be rendered, and (3) the individual making the offer had authority to bind the employer. *See Hoffman–LaRoche*, 512 So.2d at 728. And, because a contract for "permanent" employment is capable of be-

ing performed in less than a year (so the statute of frauds does not apply), such a contract may be oral. *Kitsos v. Mobile Gas Serv. Corp.*, 404 So.2d 40, 41–42 (Ala. 1981).

## A.

Green must first show (or, to avoid summary judgment against him, demonstrate a genuine dispute about) a clear and unequivocal offer. An offer expressly stating that employment is "permanent" is sufficiently clear and unequivocal to meet this requirement under Alabama law. *See Schneider v. Russell Corp.*, 823 F.2d 422, 425 (11th Cir.1987); *Bates v. Jim Walter Resources, Inc.*, 418 So.2d 903, 906 (Ala.1982); *Alabama Mills*, 186 So. at 702. Green presents, and supports by affidavit, allegations that the Authority's Executive Director told him his employment would be "permanent" and terminable only if he did something "horribly bad" after six months of probation had passed. Even if the Authority disputes these allegations, they suffice to raise a question of fact on whether a clear and unequivocal offer of "permanent" employment was made.

Apparently thinking that only written provisions could be considered, the district court focused its analysis entirely on the policy handbook. So, concluding that the language of the handbook was not specific enough to give rise to contractual rights and obligations under *Hoffman–LaRoche*, the district court had nothing else written to look to and granted summary judgment against Green. *Cf. Hoffman–LaRoche v. Campbell*, 512 So.2d 725, 735 (handbook can give rise to contractual rights and obligations if certain requirements, including specificity of handbook language, are met). As stated above, however, a contract for "permanent" employment may be oral; thus, the district court erred in failing to consider the Executive Director's alleged oral statements.

■ In addition, because the language of the handbook was clear and mandatory in nature rather than merely a general statement of policy, *see Bell v. South Cent.*

*Bell,* 564 So.2d 46, 48 (Ala.1990); *Hoffman–LaRoche,* 512 So.2d at 734; because that clear language was not rendered ambiguous by inconsistent or contradictory provisions, *see Bailey v. Intergraph Corp.,* 537 So.2d 21 (Ala.1988);[1] and because the handbook contained no disclaimers or reservations of employer discretion to deviate from the policy provisions therein, *see Stinson v. American Sterilizer Co.,* 570 So.2d 618, 620–21 (Ala.1990); *Bell,* 564 So.2d at 48; *Hoffman–LaRoche,* 512 So.2d at 734 ("[I]f the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook."), the handbook was specific enough to give rise to contractual rights and obligations. *See Hoffman–LaRoche,* 512 So.2d at 735–37; *Atkinson v. Long,* 559 So.2d 55, 56–57 (Ala.Civ.App.1990). Thus, the factfinder may also consider the handbook in determining whether a clear and unequivocal offer of permanent employment was made.[2]

### B.

The second requirement for an enforceable contract for "permanent" employment is the provision by the employee of substantial consideration apart from the services he renders. We have held in the past that, where the employee points to some more-than-nominal consideration, it is inappropriate to decide on summary judgment that that consideration is insufficient under Alabama law; a genuine question for the factfinder is presented. *See Schneider v. Russell Corp.,* 823 F.2d 422, 428 (11th Cir.1987) (whether "good will" newly-employed salesman brings with him is sufficient other consideration is question of fact for jury); *see also Scott v. Lane,* 409 So.2d 791 (Ala.1982) (giving up old job to take new, with new employer's knowledge, is sufficient consideration).

In his affidavit Green says that, to take this job, he had to make financial sacrifices. He had to move his household from another state, and his wife had to give up her old job and take a less desirable job. And Green says he told the Executive Director about these sacrifices in a pre-employment interview. These financial and personal sacrifices, known to the Authority, are similar to those deemed sufficient consideration in *Scott. See* 409 So.2d at 794 (giving up old job with knowledge of new employer is sufficient consideration). These sacrifices must be deemed more than nominal; thus, under *Schneider,* Green raises a genuine question of fact regarding the provision of sufficient consideration beyond the maintenance and supervisory services he rendered. *See also Murphree v. Alabama Farm Bureau Ins. Co.,* 449 So.2d 1218, 1221 (Ala.1984) (summary judgment on sufficiency of consideration grounds not appropriate where employee had relocated from one city to another to take job).

---

1. The Authority suggests the provisions relating to termination are inconsistent—and thus open to several possible meanings—because, like the handbook in *Bailey,* the handbook here provides for both termination-related procedures the employer must follow *and* for "immediate dismissal" (the *Bailey* handbook) or "dismissal without notice" (the handbook at issue here). The handbook in *Bailey,* however, provided for *pre-termination* disciplinary procedures to be followed by supervisors; compliance with these procedures would be necessarily inconsistent with "immediate dismissal." *See Bailey,* 537 So.2d at 21. The Authority's handbook, on the other hand, provides for a *post-termination* right to a hearing upon request; this procedure can be consistent with "dismissal without notice."

2. Of most relevance would be those provisions in which the employer again uses the term "permanent" to describe the status of some employees. We note that *both* parties seek to rely on other provisions of the handbook: the Authority says the discharge-without-notice provision negates the possibility of finding a property interest; Green says the post-discharge hearing provision mandates it. These provisions may have some relevance because the existence of procedural protections can—at least in the absence of circumstances indicating the contrary—suggest the existence of substantive restrictions on the employer's discretion to discharge. *See Suckle v. Madison Gen. Hosp.,* 499 F.2d 1364, 1366 (7th Cir.1974). But it is on the substantive restrictions on the employer's discretion to discharge, rather than on the procedural protections provided, that the existence of a property interest is based. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) ("'Property' cannot be defined by the procedures provided for its deprivation.").

## C.

 Last, the employee must show that the hiring agent (the individual extending the clear and unequivocal offer) had authority to bind the employer to a "permanent" employment contract. *See Hoffman–LaRoche*, 512 So.2d at 728. The Alabama Supreme Court has interpreted "authority" in this context broadly, giving it the same scope it has in other agency contexts: even if the hiring agent had no actual authority, the contract for "permanent" employment will be enforceable if the hiring agent had apparent authority or if the contract was ratified by the employer. *See Masters v. Cobb*, 431 So.2d 540, 541 (Ala.1983).

Green's alleged "permanent" employment contract is based on statements made by the Authority's Executive Director. It appears from the record that the Executive Director was the highest individual officer of the Authority, though answerable to a Board of Commissioners (somewhat similar to the relationship between a president and board of directors of a private corporation). To establish "authority," Green points to a handbook provision stating the Executive Director has the chief responsibility for carrying out Authority policies; but another handbook provision indicates the Executive Director's actual authority to make employment decisions regarding employees in unidentified "key" positions was subject to Board approval. Nonetheless, the Executive Director was solely in charge of and responsible for day-to-day operations of the Authority. In addition, at the end of Green's probationary period, the full Board voted to keep him on as a "permanent" employee. Under these circumstances, we conclude there is a genuine question of fact regarding authority or ratification or both. *See Schneider*, 823 F.2d at 428.

## III.

Green's allegations and affidavits raise genuine issues of fact regarding the existence of an enforceable contract for "permanent" employment under Alabama law, and thus the existence of a property interest entitling Green to due process protection.

Because genuine issues of fact remain, the grant of summary judgment for the Authority was improper. We therefore VACATE the summary judgment and REMAND for further proceedings.